# Swanson Affidavit: Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| TECHNOLOGY PATENTS LLC, | Civil Action No. 8:07-cv-3012 (AW) |
| Plaintiff, | |
| v. | |
| DEUTSCHE TELEKOM AG, et al., | |
| Defendants. | |

## DEFENDANTS' NOTICE OF DEPOSITION OF PLAINTIFF TECHNOLOGY PATENTS LLC PURSUANT TO RULE 30(B)(6)

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants Yahoo! Inc. and AT&T Mobility LLC ("Defendants") in the above-captioned action, by their counsel, will take the deposition of Plaintiff Technology Patents LLC regarding the subject matters set forth in Attachment A.

The deposition shall commence at 9:00 a.m. on July 8, 2009 at such time and place as are mutually agreed upon by counsel for the parties. The deposition will be taken upon oral examination before an official authorized to administer oaths and will be recorded by sound or sound-and-visual means such as videographic means, and/or stenographic means with real-time display of testimony.

By July 3, 2009, Plaintiff shall provide a written designation of the names and positions of the officers, directors, managing agents, or other persons who will be produced to testify on Plaintiff's behalf concerning the matters set forth in Attachment A. Pursuant to Federal Rule of Civil Procedure

30(b)(6), the person(s) designated by Plaintiff should be prepared to testify as to such matters known or reasonably available to Plaintiff.

Dated: June 30, 2009                                              Respectfully submitted,

                                                                                   /s/
Adam R. Alper, pro hac vice
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
(415) 439-1400 (phone)
(415) 439-1500 (fax)
adam.alper@kirkland.com

Gianni Cutri, pro hac vice
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000 (phone)
(312) 862-2200 (fax)
gianni.cutri@kirkland.com

Gregory D. Grant, Bar No. 13942
Courtney R. Sydnor, Bar No. 16985
SHULMAN, ROGERS, GANDAL, PORDY
AND ECKER, PA
11921 Rockville Pike, Ste 300
Rockville, MD 20852-2743
(301) 230-5200 (phone)
(301) 230-2891 (fax)
ggrant@srgpe.com
csydnor@srgpe.com

Attorneys for Defendant, Yahoo! Inc.

 /s/ Kevin E. Cadwell (w/ permission)
Bryant C. Boren, Jr., Lead Attorney (admitted p.h.v.)
Christopher W. Kennerly (admitted p.h.v.)
Kevin E. Cadwell (admitted p.h.v.)
Baker Botts LLP

620 Hansen Way
Palo Alto, CA 94304
Telephone: 650-739-7500
Facsimile: 650-739-7699
bryant.c.boren@bakerbotts.com
chris.kennerly@bakerbotts.com
kevin.cadwell@bakerbotts.com

Bruce Marcus
Bar No. 06341
Law Offices of Marcus Bonsib, LLC
6411 Ivy Lane, Suite 116
Greenbelt, MD 20770
Telephone: 301-441-3000
Facsimile: 301-441-3003
Email: bmarcus@marcusbonsib.com

ATTORNEYS FOR AT&T MOBILITY LLC

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on **June 30, 2009**, a true and correct copy of the foregoing **DEFENDANTS' NOTICE OF DEPOSITION OF PLAINTIFF TECHNOLOGY PATENTS LLC PURSUANT TO RULE 30(B)(6)** was served **via email** on the following counsel of record for Plaintiff:

Joseph A. Rhoa
NIXON AND VANDERHYE PC
901 North Glebe Road
11th Floor
Arlington, VA 22203
Tel:   (703) 816-4043
Fax:   (703) 816-4100
Email:  JAR@nixonvan.com

                                                  Gianni Cutri /s/
                                                  Attorney for Defendant

**Attachment A**

1. The identity, nature, location, and maintenance of all files, archives, databases, and any other type of storage systems, electronic or otherwise, currently or formerly existing, in or formerly in TPLLC's possession or control, which may store or may have formerly stored documents responsive to requests to TPLLC for the production of documents and things.

2. TPLLC's search for and collection of documents and things in response to requests to TPLLC for the production of documents and things, including prosecution of the Patents-In-Suit or any Related Patents or Patent Applications.[1]

3. The acquisition, generation, maintenance or disposition of documents by TPLLC and any policies or procedures relating thereto.

4. The identity, nature, location, and maintenance of documents and information concerning the ownership, organizational structure, and operations of TPLLC, including but not limited to an identification of all investors, shareholders, directors, officers, employees and independent contractors of TPLLC, and the positions, titles, and interests of those individuals.

5. The identity, nature, location, and maintenance documents and information concerning any absolute, contingent, potential or any other right to a share in any recovery TPLLC may obtain from this lawsuit.

6. An identification of each director, officer, employee, or independent contractor of TPLLC and/or any other entity owned or operated by Mr. Aris Mardirossian, including but not limited to an identification of each such individual's dates of employment, job description, and

---

[1] The term "'542 patent" shall mean United States Patent No. 6,646,542. The term "'870 patent" shall mean United States Reissued Patent No. RE39,870. The term "'983 patent" shall mean United States Patent No. 6,960,983. "Patents-in-Suit" or "Patents" means the '542 patent and the '870 patent. "Related Patents or Patent Applications" and "Related Patents and Patent Applications" means any U.S. or foreign patent or patent application that (i) stems from or claims priority to the '542 patent, '983 patent or the '870 patent; or (ii) describes subject matter claimed or described in the '542 patent, '983 patent or the '870 patent; or (iii) claims any subject matter claimed or described in the '542 patent, '983 patent or the '870 patent.

documents relating to their employment (*e.g.*, employment agreements, confidentiality agreements, etc.).

7. The identity of any trustees, members, persons, beneficiaries, or any other entities or individuals associated with any trust having any ownership interest in TPLLC, including but not limited to the 1995 Mardirossian Family Trust, the 1992 Aris Mardirossian Irrevocable Trust, the 2000 Matthew Mardirossian Irrevocable Trust, and the 2001 Karis Mardirossian Irrevocable Trust, an identification and description of the amounts and nature of any contributions, distributions, holdings, or other transactions involving such persons or entities, and an identification and description of any agreements with such persons or entities.

8. The preparation, filing, or prosecution of the Patents-In-Suit or any Related Patents or Patent Applications.

9. Any persons involved with the prosecution of the Patents-In-Suit or any Related Patents or Patent Applications, including but not limited to the persons who received copies of correspondence with the USPTO concerning such applications, the persons consulted with respect to such applications, and anyone who assisted in the drafting or collection of any material to be submitted to the USPTO in connection with such applications.

10. How and when TPLLC, its counsel, or anyone subject to the duty of candor before the USPTO with respect to the Patents-In-Suit learned of any potential or actual prior art to the Patents-In-Suit or to any Related Patents or Patent Applications, including but not limited to how and when they learned of the art cited on any IDS.

11. All documents constituting, referring, or relating to manuals, articles, books, patents, publications, notes, laboratory notebooks, sketches, memoranda, articles, technical reports, technical journals, technical specifications, or any other reference materials relating to the subject matter described, shown or claimed in the Patents-In-Suit or any Related Patents or Patent Applications that, during the prosecution of the Patents-In-Suit or any Related Patents or Patent Applications, were (i) in the possession, custody and control of; (ii) known by; or (iii) consulted or referred to by, persons involved in the preparation or prosecution of the Patents-In-

Suit or any Related Patents or Patent Applications, including but not limited to how and when those persons acquired those materials.

12. Any potential or actual prior art to the Patents-In-Suit or to any Related Patents or Patent Applications, even if you dispute that the material constitutes or discloses prior art, including but not limited to art cited during prosecution of the Patents-In-Suit, art cited during prosecution of any Related Patents or Patent Applications, and art disclosed by any third parties (including in any litigation involving the Patents-In-Suit or in licensing discussions), and any searches for prior art.

13. All ownership, interests, title, rights, options or other interests in the Patents-In-Suit or any Related Patents or Patent Applications, including but not limited to any purchase, conveyance, assignment, sale, foreclosure, auction or other transfer of the Patents-In-Suit or any Related Patents or Patent Applications or any interest therein.

14. Any documents or communications, including without limitation agreements and/or any amendments or modifications thereto, relating to the ownership of the Patents-In-Suit or any Related Patents or Patent Applications, any license to the Patents-In-Suit or any Related Patents or Patent Applications including any right of first refusal related to or involving the Patents-In-Suit or any Related Patents or Patent Applications, or any offers to purchase, convey, assign, sell, or otherwise transfer the Patents-In-Suit or any Related Patents or Patent Applications or any interest therein.

15. Any strategies, plans, or expectations (whether of the assignees, the inventors, licensing counsel, or otherwise) with respect to the subject matter disclosed or claimed by the Patents-In-Suit or by any Related Patents or Patent Applications, including without limitation any plans to commercialize, sell, license, litigate over, or otherwise derive business or revenues from the Patents-In-Suit or from any Related Patents or Patent Applications, and also including without limitation any efforts to obtain investments, funding, income, or revenue relating in any way to the subject matter of the Patents-In-Suit.

16. The financial condition and business plans of TPLLC or any other alleged assignee of the Patents-In-Suit or any Related Patents or Patent Applications on and after the issuance date of the earliest issued Patent-In-Suit.

17. The design, development, sale, offer for sale, disclosure, or public use of the subject matter of the Patents-In-Suit or any Related Patents or Patent Applications, including without limitation sales, offers for sale and/or disclosures at any trade shows, and also including any products that have been licensed or for which a covenant not to sue has been extended under the Patents-In-Suit or under any Related Patents or Patent Applications.

18. The identity and roles of each person who participated in the design or development of any products or services covered by the Patents-In-Suit or by any Related Patents or Patent Applications that have been made, sold, used, or imported by TPLLC.

19. The conception of the alleged invention of the Patents-In-Suit or of Related Patents or Patent Applications, the best mode of practicing such alleged invention, any actual or constructive reduction to practice of such alleged invention, and any improvements to such alleged invention, including but not limited to inventor records, notebooks, physical embodiments of all or part of such alleged invention, and all devices, apparatus or software purchased or built by the inventors for the purpose of researching, developing, or reducing to practice such alleged invention, and any documents contended to corroborate conception or reduction to practice.

20. The inventorship, patentability, validity or invalidity, enforceability or unenforceability, or infringement (including TPLLC's June 15, 2009 Claim Charts and Proposed Claim Construction Statement and attachments thereto) or non-infringement (whether direct, contributory or by inducement) of the Patents-In-Suit or of any Related Patents or Patent Applications, including without limitation, any contention by any person or party, including without limitation any third party, named inventor, experts, consultants, prosecuting counsel, prior art search firm, or any other person or party, that any of the Patents-In-Suit or any Related Patent or Patent Application is invalid, unenforceable or not infringed.

21. Any opinions, evaluations, advice, or analyses concerning the validity or invalidity, enforceability or unenforceability, infringement or non-infringement, or scope of the claims of the Patents-In-Suit or of any Related Patents or Patent Applications, and all documents reviewed in the formation of such opinions, evaluations, advice, or analyses.

22. Any contention that the alleged invention of the Patents-In-Suit is not obvious under 35 U.S.C. § 103, including but not limited to documents that allegedly relate to or evidence secondary considerations of non-obviousness such as commercial success, long-felt need, industry recognition, copying by others, prior failure by others, licensing by others, or unexpected results.

23. Any instances in which any entity with which Mr. Aris Mardirossian has any affiliation has been challenged in regards to its standing to assert intellectual property claims, ownership of asserted intellectual property, or where any unclean hands, bad faith, tortious interference, civil conspiracy, unfair competition, antitrust assertion or similar claims have been asserted, and a description of the outcome of any such proceedings including any settlements or dismissals.

24. Any product or service that TPLLC contends embodies, incorporates, or includes the subject matter described in the Patents-In-Suit or in any Related Patents or Patent Applications.

25. All assertions of the Patents-In-Suit, formal or informal against any person or entity, and any decision not to assert the Patents-In-Suit against any person or entity.

26. Any pre-suit investigation relating in any way to TPLLC's claims against the Defendants in this case, and/or all efforts to comply with Fed. R. Civ. P. 11 prior to asserting the Patents-In-Suit against the Defendants in this case, including but not limited to an identification of all products or services by name that TPLLC inspected (whether or not that product or service was ultimately accused by TPLLC in this litigation of infringing the Patents-In-Suit) and the date(s) on which each of those products or services was inspected; and an identification of all

documents TPLLC reviewed in its determination that the Defendants allegedly infringe the Patents-In-Suit.

27.  Factors that may be considered in TPLLC's calculation or assertion of claims for damages, including but not limited to royalty rates and past damages.

28.  Any alleged knowledge or awareness of the Defendants in this case of the existence of the Patents-In-Suit.

29.  Any communications between TPLLC and the Defendants in this case referring or relating to the Patents-In-Suit and/or any potential or actual infringement thereof.

30.  Any communications between TPLLC and anyone else relating to the Patents-In-Suit, any Related Patents or Patent Applications, or this litigation.

31.  TPLLC's responses to any interrogatories.

32.  The authenticity and admissibility of documents produced in this litigation relating to the above topics.

33.  Any privilege logs served in this action.